D. P. HARRIS HARDWARE AND MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48379. Promulgated November 12, 1931.

*Herman Goldman, Esq.,* and *Benjamin Wiener, Esq.,* for the petitioner.

*Eugene Meacham, Esq.,* and *Charles E. Lowery, Esq.,* for the respondent.

OPINION.

SEAWELL: In the original petition, the deductions now sought were claimed on account of debts ascertained to be worthless in the several years under review, but at the hearing claims on that ground were abandoned and the same relief was asked in an amended petition on account of " Losses sustained during the taxable year and not compensated for by insurance or otherwise." (Section 234 (a) (4) of the

Revenue Act of 1926.) In other words, we do not understand it is now contended that the deductions can be allowed under the "bad-debt" provisions of the statute (section 234 (a) (5) of the Revenue Act of 1926), which require that the debt be "ascertained to be worthless and charged off within the taxable year," since the debts were not charged off in the respective years for which the deductions are sought. In fact, the evidence, so far as presented with respect to the dates when the various debts were charged off, shows that the essential requirement of the statute as to charging off the debts was not complied with in the years necessary to permit the deductions claimed and little evidence was furnished as to when the debts were ascertained to be worthless. On the other hand, the petitioner contends that because it can not comply with the bad-debt provision is no ground for a disallowance where the proof necessary for an allowance as a loss sustained can be furnished. The Commissioner, however, takes the position that the two sections are mutually exclusive so that a loss deductible under one section may not be deducted under the other. The proof offered was for the purpose of showing that losses were sustained in the various years on account of the debts in question, but before passing on the sufficiency of that evidence in so far as considered necessary, we will consider the preliminary question of whether a deduction may be allowed on account of bad debts when compliance is not had with the bad-debt provisions of the statute.

Since, and including, the Revenue Act of 1918, specific separate provisions have existed for the allowance of deductions to corporations on account of " Debts ascertained to be worthless and charged off within the taxable year " and " Losses sustained during the taxable year and not compensated for by insurance or otherwise." Of course, as we said in *Emil Stern et al.*, 5 B. T. A. 89, " If a debt becomes worthless, it would seem that a loss has been sustained," and, as observed by the court in *Electric Reduction Co.* v. *Lewellyn*, 11 Fed. (2d) 493 (Third Circuit), " Every worthless debt is a loss, but not every loss a worthless debt." We think it evident that Congress had in mind a distinction between the treatment to be accorded a loss arising from a bad debt and other losses, and certainly did not intend that a double deduction was to be allowed, namely, a deduction in the year in which he debt actually *became* worthless (that is, a loss was sustained), regardless of when ascertained and written off, and also a deduction when the debt was ascertained to be worthless and written off. *Emil Stern et al., supra.*

Here, however, we are not concerned with a double deduction, but more particularly with the question whether an option or election exists under which a taxpayer may claim a deduction on account of

a bad debt either in the year the debt became worthless or in the year of ascertainment and write-off. While proof was not offered for the purpose of showing date of ascertainment, apparently the situation here exists in some cases where the petitioner did not ascertain the debts to be worthless until 1929 when they were written off, whereas evidence was introduced in order to show that the debts actually and finally became worthless in 1925. Conceding for the purpose of this discussion that certain debts became worthless in 1925, but the petitioner did not ascertain their worthlessness until 1929, when they were written off, may the petitioner take the deductions in either 1925 or 1929? We are of the opinion that Congress made a distinction between losses arising from bad debts and other losses and that losses under the former class can only be recognized in the form of a deduction from gross income when the bad-debt provision of the statute is complied with. To hold otherwise would not only fail to give force and effect to the express provisions of the statute, but also would permit taxpayers to postpone to, or take the deduction in, the particular year when it would be most advantageous to them. For example, if in 1929 a taxpayer determines that a debt had become worthless in 1925, and writes it off in 1929, we do not think Congress ever intended that it should be permitted to take the deduction in 1925 or 1929 in accordance with the advantage which would accrue to it on account of a difference in tax-rates or the amount of income realized or losses sustained in the respective years. As expressed by Judge Kenyon in another connection in the recent case of *Kansas City Southern Ry. Co.* v. *Commissioner*, 52 Fed. (2d) 372, " It is not given to parties to make choice as to the years in which they will take deductions," and by Justice Brandeis in *United States* v. *Ludey*, 274 U. S. 295, " He cannot choose the year in which he will take a reduction." In the absence of a specific provision which would permit such an unusual result and when we have an express provision to take care of bad debts, we are of the opinion that a bad-debt deduction can only be allowed when the bad-debt provision has been compiled with.

This question has been before the courts on many occasions. While expressions used in some instances may be at variance with the conclusion herein reached, an examination of the facts upon which the decisions were based shows nothing inconsistent with our views on this question; on the contrary, positive support is found in each case for the position indicated above. The earliest expression we find on the subject is in *Electric Reduction Co.* v. *Lewellyn, supra,* wherein the court said:

Congress doubtless had in mind a distinction between a loss and a worthless debt. Every worthless debt is a loss, but not every loss is a worthless debt.

Every worthless debt is allowed as a deduction, if it is ascertained to be worthless, and is charged off within the taxable year. So far as allowance as a deduction is concerned, a loss and a worthless debt amount to the same thing, *if the latter is charged off in time.* [Italics supplied.]

While the case was reversed by the Supreme Court (*Lewellyn* v. *Electric Reduction Co.*, 275 U. S. 243), the reversal was on the ground that the loss in question (both courts agreeing that the deduction sought was not on account of a bad debt) was not sustained. in the taxable year, as the Circuit Court had held. In discussing the issue involved the court said:

We assume without deciding, as was assumed by both courts below, that subsection (4) and subsection (5) are mutually exclusive so that a loss deductible under one may not be deducted under the other. * * *

In *Porter* v. *United States*, 20 Fed. (2d) 935, the United States District Court for the District of Idaho said:

There appear to be two classes of deductions under the statute: "(1) Losses sustained during the taxable year and not compensated for by insurance or otherwise. (2) Bad debts ascertained to be worthless and charged off during the taxable year." The inquiry, then, presents itself: Why did Congress find it necessary to specify these two classes of allowable deductions, if it did not have in mind a distinction between a worthless debt and a loss? A loss and a worthless debt may amount to the same thing, if the debt is charged off in time as required by statute; but Congress has said that, to entitle one to a deduction for a worthless debt, it must be ascertained and charged off during the taxable year. * * *

*       *       *       *       *       *       *

The losses in the present case were nothing more than sums of money due upon express contracts, which the borrowers were bound to pay to the bank, and fall within the provisions of section 234 (a) (5) of the Revenue Act of 1918, which brings them under the class of "debts." If Congress had intended that worthless debts, not ascertained and charged off during the taxable year, should include "losses," it would have been very easy to have said so, and, where such intention is not so expressed, the difficulty in attempting to apply the provision of the statute as to "losses" to "debts" is that we are confronted with the other express provision of the statute requiring the taxpayer, before deductions can be allowed, to first ascertain and charge them off as worthless within the time. It would seem impossible to take any other view, and at the same time recognize the force and effect of section 234 (a) (5).

When the foregoing case was affirmed by the Circuit Court of Appeals for the Ninth Circuit (27 Fed. (2d) 882), the same distinction was recognized:

* * * Losses, generally speaking, may include debts; but in the statute quoted, by the enumeration separately of losses and debts, Congress made a distinction which must be recognized. * * *

To a similar effect is *United States* v. *Klausner*, 25 Fed. (2d) 608, where the court said, "We agree with the Government's contention that the claim against the Navy Knitting Mills was a 'bad

debt' and could be deducted *only* as of the taxable year in which it was ascertained to be worthless and was charged off. (Italics supplied.) See also *Minnehaha National Bank* v. *Commissioner*, 28 Fed. (2d) 763.

In *Sherman & Bryan* v. *Blair*, 35 Fed. (2d) 713, the question under consideration was whether, under the Revenue Act of 1918, a deduction might be allowed where a debt was written off during the taxable year, but there was an ascertainment of only partial worthlessness. The case came up on a petition for review of a decision by the Board (9 B. T. A. 213), in which the Board had held that the evidence did not justify the conclusion that the debt had been ascertained to be wholly worthless, and that an ascertainment that a debt was worthless only in part precludes any allowance until the entire debt was ascertained to be worthless. The Board accordingly denied the taxpayer the benefit of any deduction. On review the court sustained the Board on the point that the entire debt had not been ascertained to be worthless, but reversed the decision on the ground that a loss had been sustained to the extent of the uncollectible portion of the debt and that such amount should be allowed as a deduction. The court, however, made the following specific reference to the fact that the debt had been written off within the taxable year, evidently not overlooking the necessity for compliance with this provision of the statute:

Our own case of *United States* v. *Klausner*, 25 F. (2d) 608, 611, contains a dictum that a debt of doubtful value could not be deducted as a "loss." In *Porter* v. *United States*, 27 F. (2d) 882, 884 (C. C. A. 9), there is a similar dictum. In neither case was there any *charge-off* of the debt as worthless in whole or in part, nor had it become uncollectible by a receiver's seizure of the debtor's property. * * *

The seizure of the debtor's property by a receiver prevents collection, and definitely fixes the loss to be the difference between the face of the debt and whatever dividend the receivership may pay. The Commissioner's position leads to the conclusion that, if any dividend is likely, no loss can be deducted until the receivership is wound up, which may be many years later. Business men do not carry on their books at face value claims against a debtor in receivership, and it cannot be supposed that the Revenue Act of 1918 was intended to require them to do so. When a creditor's debtor goes into receivership, and the creditor believes the debt to be worthless and *charges it off*, he recognizes that he has sustained a loss at least to the extent that the receivership dividend which may thereafter be declared leaves the debt unpaid. Presumptively the taxpayer's decision that a debt is worthless, and *so charged off*, measures his loss. If the Commissioner surcharges his return because of a mistake as to the amount of the loss, we think he should not surcharge for so much of the loss as he admits has been suffered. * * * [Italics supplied.]

The case of *Davidson Grocery Co.* v. *Lucas*, 37 Fed. (2d) 806 involved a situation in which a deduction was allowed under the Revenue Act of 1918 where the debts were ascertained to be partially

worthless in the taxable year and where such parts were also written off in the same year. The opinion follows the reasoning set out in *Sherman & Bryan* v. *Blair, supra*, but again we do not understand that the court would have allowed the loss on account of the bad debt in the year in which fixed " by the occurrence of events which prevent their collection " had there not also been a write-off in the same year of that amount. In fact, a greater loss was sustained on each debt than was actually written off, but there is no suggestion by the court that, even if claimed, the taxpayer would have been entitled to the entire loss sustained if such amount had not been written off.

In view of the foregoing, we are of the opinion that the contention of the petitioner to the effect that losses sustained on account of bad debts should be allowed as deductions in the years in which sustained, regardless of when ascertained and written off, must be denied. The fact that a debt has been ascertained to be worthless may mean that a loss has been sustained, but a deduction on account thereof can only be allowed when written off within the taxable year during which ascertained to be worthless. No claim is here made, nor was evidence introduced to show, that partial worthlessness was ascertained or sustained in any year when the debts were written off and therefore no deduction on that account may be allowed.

The petitioner contends further, however, that all of the items in question do not come within the category of debts, and therefore in no event would compliance with the bad-debt provision be requisite to a deduction when it could be shown that a loss had been sustained. One group of items consists of amounts owing to the petitioner on account of merchandise sold to various parties and these amounts are admitted by the petitioner to represent " debts " within the meaning of the statute. The second class involves accounts which arose in the same way as the first, but, in lieu of payment, promissory notes were given in the amount of the various accounts and they were not paid at maturity, nor have they since been paid. It is true that after the execution of the promissory notes the petitioner had evidence of indebtedness not theretofore had, but we fail to see why the notes were none the less debts than were the accounts receivable. There was still an existing indebtedness of the same creditors which answers every requirement of a debt. Still another group consists of accounts receivable which were assigned to petitioner in partial satisfaction of certain amounts which were owing to petitioner by other parties, but again we are of the opinion that the assigned accounts were debts owing to the petitioner within the purview of the statute. It might be said that the petitioner has acquired an asset through the assignment in the same sense that it might invest in a bond on the open

market, but the Board and the courts have held that bonds so acquired constitute debts as contemplated by the statute in question. *Anna Bissell*, 23 B. T. A. 572, and *Commonwealth Commercial State Bank* v. *Lucas*, 41 Fed. (2d) 111.

It is also contended that the item of unpaid rent claimed as a deduction for the fiscal year ended August 31, 1927, does not constitute a debt within the meaning of the statute, though we have held to the contrary. *Howard J. Simons*, 1 B. T. A. 351. However, the evidence offered is so meager that, even if considered other than a debt, a deduction as a loss could not be allowed. · We know that the rent which was due on August 1, 1927, was not paid then or at any other time and that upon examination the petitioner found that the tenant had dissipated its assets and was unable to pay, but that would not be sufficient to allow the deduction as a loss for the fiscal year ended August 31, 1927, when we do not know at what time the tenant dissipated its assets and became unable to pay. The amount was written off on August 31, 1929, and in explanation of the delay in making the charge-off petitioner's witness stated: "While we waited a year to deduct that account, we were in hopes that they would probably pay up that old indebtedness."

The amount embezzled from petitioner in the fiscal year ended August 31, 1926, is properly allowable as a deduction in that year on account of a loss then sustained. *Peterson Linotyping Co.*, 10 B. T. A. 542. The final item for which a deduction is asked is on account of a claim of the petitioner against the Philadelphia & Reading Railroad for a shipment of goods lost in transit, but we have no facts from which we can determine when the loss, if any, occurred and accordingly the allowance of a deduction on account thereof must be denied.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*