SEARLES REAL ESTATE TRUST, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 24489.   Promulgated April 12, 1932.

*George E. Elliott, Esq.*, and *Paul R. Clay, Esq.*, for the petitioner.
*C. R. Marshall, Esq.*, for the respondent.

### OPINION.

BLACK: In this proceeding the petitioner seeks a redetermination
of its income-tax liability for the years 1922 and 1923, for which
years the respondent has determined deficiencies of $3,259.80 and
$3,558.81, respectively, and has also asserted a 25 per cent delin-
quency penalty for each of the years in the respective amounts of
$814.95 and $889.70.

The petitioner, in its original petition and by amendment, assigned errors which it designated A, B, C, D, E, F, G and H. All have been abandoned except C, E, F and G, which are as follows:

C. In allocation of total purchase price paid for both tracts to the two separate tracts known as "Oakside" and "Highfield" in determination of initial cost of each tract.

E. In respect of penalties imposed, that the Commissioner was not justified upon the evidence submitted in determining the failure of the petitioner to file returns was due to willful neglect or without reasonable cause.

F. Respondent erred in denying petitioner a deduction in the amount of $1,000 in the year 1923 in respect of a bad debt owing from one Thomas W. Dowling.

G. Petitioner is entitled to a deduction from its gross income in the years 1922 and 1923 of certain legal expenses in the amounts of $466.00 and $454.65, respectively, not heretofore allowed by respondent.

## Error C.

The petitioner is a common law trust, created by declaration of trust dated March 31, 1922, with its office at Lawrence, Massachusetts. It is an association taxable as a corporation. Upon that point there is no dispute between the parties. Edward F. Searles, a wealthy resident of Methuen, Massachusetts, died in 1921. Among the assets of his estate were two parcels of undeveloped real estate situated in Methuen, adjoining the city of Lawrence, known as "Oakside" and "Highfield." Frank M. and T. Edwin Andrew, who as a partnership conducted a real estate brokerage business in the city of Lawrence, Massachusetts, conceived the idea of developing for residential purposes the tract known as "Oakside," which had many attractive features and was readily adaptable to subdividing. The representatives of the Searles estate refused to dispose of Oakside unless Highfield was included in the purchase. It was decided by the prospective purchasers to form a common law trust to which the land could be transferred. On March 31, 1922, the Searles Real Estate Trust was created and the Searles estate conveyed directly to the trust the two tracts of land.

In consideration of the transfer of the property to it, the Searles Real Estate Trust gave to Frank M. and T. Edwin Andrews its gold mortgage bonds in the amount of $200,000 and a 70 per cent interest in the capital of the trust. The remainder of the capital interest in the trust was transferred to the three individuals who were named as trustees in the declaration of trust, as trustees. It has been stipulated that the cost of the two tracts, together with the buildings thereon, to the petitioner was $200,000. The trust also acquired from Thomas L. Barstow on or about April 1, 1922, an adjoining parcel of land in order to straighten the boundary of Oakside, at a cost of $4,000. It has been agreed that of the costs as shown above, the amounts of

$11,876.48 and $475.06 should be allocated to the cost of the buildings on Oakside and Highfield, respectively. It has also been agreed between the parties that the further sum of $2,257.32 is properly allocable to a reservation for park or play ground purposes, established upon the southeast corner of Oakside, immediately adjacent to the city limits of Lawrence. The petitioners made no attempt to allocate any part of the $200,000 as cost to either tract of land at the time of purchase. The respondent in computing the deficiency made his allocation on the basis of 44.4 per cent to Oakside and 55.6 per cent to Highfield. The taxpayer is contending that the allocation should be made on the basis of 74.3 per cent to Oakside and the balance to Highfield.

The petitioner subdivided into 450 lots and developed the Oakside tract, of approximately 75 acres, during the years 1922 to 1923, at a total cost of $64,818.62, which was largely expended for grading and the building of sidewalks.

The Highfield tract contains approximately 200 acres and adjoins East Street, Methuen, Massachusetts, directly opposite from the Oakside tract. About one-third of Highfield is on a high knoll and the remainder consists of land not so desirable, some of it being marshy, and unsuited for development. The sewerage facilities available for the Oakside tract were not sufficiently adequate to allow the addition of connections to serve Highfield in case it should be developed. Highfield has never been subdivided or improved and the expansion from the city of Lawrence has not been such as to warrant any such development. In 1922 the prospects for the development of Highfield were very remote and under the existing conditions there was no indication that it could be marketed for residential purposes.

In the period since the petitioner acquired these two tracts, 250 lots have been sold from Oakside, but there has been no inquiry for any land in Highfield, except one small parcel at the northeasterly corner of the property.

We think it is clear from the evidence that Oakside had a considerably greater value than Highfield, but we do not believe the evidence sustains petitioner's contention that the proportion is three to one in favor of Oakside. Considering all the evidence in the record, we find that the aggregate cost of the two tracts (which was $200,000), after deducting the agreed cost of buildings, $12,351.54, and agreed cost of park reservation, $2,257.32, should be apportioned as follows: To the tract known as Oakside, two parts; to the tract known as Highfield, one part. To the cost of Oakside as thus ascertained should be added $4,000, which it has been agreed was the cost of the Barstow parcel which was purchased and added to Oakside after the acquirement of the latter tract from

the Searles estate in 1922. This disposes of petitioner's assignment of error " C."

### Error F.

Thomas W. Dowling was a building contractor, operating in Andover and to some extent in Lawrence and Methuen, Massachusetts. In 1922 and 1923, he had purchased forty or more lots in Oakside from petitioner and built houses thereon. He financed the purchase of these lots by giving petitioner a check to be cashed at some indefinite time in the future after a mortgage had been placed on the property. He paid for all of these lots except one. During the latter part of the year 1923 he purchased a lot for $1,000 and gave his check with the understanding that it was to be presented for payment at a later date. The check was dishonored when presented for payment some time late in 1923. The exact date when said check was presented for payment and payment was refused is not shown. The evidence shows however that petitioner continued to hold the check and to endeavor to collect it until it was ascertained to be worthless in 1924. Dowling became insolvent and made an assignment for the benefit of creditors in April, 1924.

The applicable section of the Revenue Act reads:

SEC. 214. (a) That in computing net income there shall be allowed as deductions:

    *       *       *       *       *       *       *

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

    *       *       *       *       *       *       *

(7) Debts ascertained to be worthless and charged off within the taxable year * * *.

It is the contention of the petitioner that the transaction resulted in a loss which is deductible under the provisions of subsection (4), while the respondent takes the position that the transaction is governed by subsection (7). The petitioner argues that the loss occurred when it accepted the check in payment of the lot, which he alleges was at all times worthless.

It seems to us that petitioner's method of selling Dowling these lots and taking his check, to be paid at some future date when he had succeeded in negotiating a first mortgage on the property, out of the proceeds of which payment was to be made, was simply the creation of the relation of debtor and creditor between the parties. Petitioner exchanged its lot for a check to be paid at a future date. Under such circumstances the check is very similar to a promissory note evidencing the debt which Dowling owed petitioner for the lot. Petitioner admits that it did not include this check in its books as income in 1923 because it kept its books on the cash receipts and disbursements basis, and it was not treated as a cash item. Of

course, it is elementary that a taxpayer can not take, as a bad debt loss, a note or account which has never been included in gross income. Cf. *J. Noble Hayes*, 7 B. T. A. 936; *Henry V. Poor*, 11 B. T. A. 781.

However, petitioner contends that respondent, in computing the deficiency, did include the check in income and that because of the circumstances which we have already related, petitioner should be allowed to deduct the item as a loss in 1923. Counsel for respondent at the hearing did not admit that this item had been carried into gross income in computing the deficiency.

The revenue agent's report which was used as a basis in computing the deficiency, and which was approved by respondent, was introduced in evidence. It shows the various items of petitioner's income and deductions as compiled by the revenue agent from petitioner's books, but the items of income are not sufficiently analyzed for us to determine whether this $1,000 check from Dowling was included in gross income. But even if we assume that it was so included and that petitioner's method of handling the checks was equivalent to charging it off within the taxable year, still we do not think petitioner would be entitled to prevail on this item.

In addition to charging it off in 1923, the taxpayer must also have actually ascertained the debt to be worthless in that year, and the facts show there was no ascertainment of worthlessness in 1923. That took place in 1924. It was then that Dowling went into bankruptcy and petitioner ascertained that it would never collect its debt.

Petitioner is not entitled to take the deduction claimed because it did not ascertain the debt against Dowling to be worthless in 1923. *D. P. Harris Hardware & Mfg. Co.*, 24 B. T. A. 752, and long list of cases there cited.

## Error G.

The petitioner contends that it incurred legal expenses in the amount of $446 and $454.65 during the years 1922 and 1923, respectively, for professional services rendered by Paul R. Clay, as attorney, and that it is entitled to take these amounts as deductions in the respective years.

The evidence shows that in the years 1922 and 1923 Paul R. Clay, of the law firm of Rowell & Clay, as attorney for petitioner, rendered certain legal services pertaining to the operations in those years, for which deduction has never been allowed petitioner. These services consisted of the preparation of deeds, professional services in connection with contracts of petitioner for grading, laying sewers and construction of streets, conferences with town officials in connection with installing water mains and a bond issue in connection with installation of a watering system, preparation of a form for

sale of lots, and like services, and expenses in connection therewith, amounting to $466 in 1922 and $454.65 in 1923. These services and disbursements were recorded upon the books of the law firm, but the bills were not paid in those years because there was no available money.

The petitioner admits that its books of account were kept on the cash receipts and disbursements basis, but contends that respondent has computed its income on the accrual basis and that therefore the claimed deductions should be allowed. An examination of the revenue agent's report which was introduced in evidence shows that the respondent computed petitioner's net income for 1922 and 1923 upon an accrual basis, except in the case of a relatively few installment sales of lots, the income from which he computed upon the installment sales basis. Where income is computed on the accrual basis, items of expense should be accrued in the year when incurred. *United States* v. *Anderson*, 269 U. S. 422; *Aluminum Castings Co.* v. *Routzahn*, 282 U. S. 92.

Petitioner's contention in assignment of error " G " is accordingly sustained.

## Error E.

The petitioner did not file any Federal income-tax returns of any kind for the years 1922 and 1923 and the respondent has asserted the 25 per cent penalty provided by section 1311 of the Revenue Act of 1921.

Section 3176 of the Revised Statutes, as amended by section 1311 of the Revenue Act of 1921, provides in part as follows: " *   *   * In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner of Internal Revenue or the collector in pursuance of law, the Commissioner of Internal Revenue shall add to the tax 25 per centum of this amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax. *   *   * "

Section 225 (a) (4) of the Revenue Act of 1921 provides that every fiduciary shall make under oath a return for " every estate or trust, the net income of which for the taxable year is $1,000 or over *   *   *." Section 239 (a) of the same act provides that every corporation not expressly exempt from tax must make a return, regardless of the amount of net income.

Section 2 (2) of the Revenue Act of 1921 provides that, " The term ' corporation ' includes associations *   *   *." The petitioner concedes that it is a common law trust and that under the

decision of the Supreme Court in *Hecht* v. *Malley*, 265 U. S. 144, it is an association within the meaning of the above section and is taxable as a corporation. It contends that its failure to file returns was not due to willful neglect on its part and that the advice it sought and received shows reasonable cause for not filing returns. Not only did the petitioner fail to file a return within the time prescribed by law, but failed to file a return at any time and thus, unless legally excused from filing belated returns by the circumstances which we will hereafter discuss, does not come within the exception provided in the statute. *Southern Ice & Fuel Co.*, 10 B. T. A. 1213; *A-C Investment Association*, 24 B. T. A. 582.

In *A-C Investment Association, supra,* we said:

Under the above quoted provision [speaking of section 3176 which we have already cited] no such addition to the tax shall be made "when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect." The sentence is in the conjunctive. Both conditions must exist. There must have been a filing (though late) of a return and there must have been reasonable cause for the failure to file on time. Here the stipulation is that no returns were filed for the years 1920 to 1927, inclusive. The stipulated facts do not make clear whether the form filed in 1927 related to one year only or to all previous years, but even if such claim for exemption were filed for the entire period, in our opinion such filing would not be equivalent to filing a return required by the statute. The statute is clear and definite that a *return* must be filed to entitle taxpayer to relief from penalties.

In the instant case, petitioner having filed no belated returns, it would seem that under the rule as announced in the above quoted decision there would be no legal grounds for relief from the penalties provided by the statute, even though the taxpayer did present a reasonable cause for not having filed original returns within the time required by law. But petitioner says that after the decision of the Supreme Court of the United States in *Hecht* v. *Malley, supra,* and after the Commissioner had promulgated his new regulations thereunder, it offered to file belated returns, but that the internal revenue agent who had examined petitioner's books told Paul R. Clay (one of petitioner's trustees and its legal adviser) that it was unnecessary to file any belated returns because the report which he was sending to the Department furnished all necessary information to enable the Commissioner to compute the income for the taxable years.

On this point, Paul R. Clay, a witness for petitioner, testified:

I took that matter up with Mr. Tedford [meaning the internal revenue agent]. I have seen so many people connected with the Department service, I cannot be exact, but I am very sure that it was Mr. Tedford, who told us that in view of his report and the determination made, it would not be necessary for us to file any belated returns and I am very sure that I had that same information from the Treasury Agent in Charge of the office in Boston. We offered to file returns if necessary, but were told it was not necessary to file them.

This testimony was uncontradicted and we have no reason to disbelieve it.

Although petitioner in its brief does not so designate it, the plea which it advances as to why the Commissioner should not be permitted to impose ad valorem penalties of 25 per cent for each of the taxable years amounts to a plea of equitable estoppel against such action on the part of the Commissioner. The effect of petitioner's contention is to say that because the revenue agent who examined petitioner's books and also the revenue agent in charge at Boston, Massachusetts, told those in charge of petitioner's affairs that it need not file belated returns, it was thereby relieved from the necessity of doing so and may have the privilege of showing that its failure to file its original returns was due to reasonable cause and not willful neglect, and be thereby relieved from the ad valorem penalties, just the same as if it had actually filed belated returns as required by the statute cited above, and that the United States Government, through the Commissioner of Internal Revenue, is estopped from denying it such right. ·

The doctrine of equitable estoppel as applied to the tax liability of taxpayers was discussed by us in *James Couzens*, 11 B. T. A., beginning at page 1148. After stating the grounds upon which the doctrine was sought to be invoked in that case, among other things, we said:

The nature of this argument is such as to omit any consideration on the measure of petitioners' tax liability had timely demand been made, and strikes only at the respondent's right at this time to assert such liability as might otherwise exist—an argument finding its basis, not in the express terms of the statute by which tax liability is commonly measured, but in the conduct of the parties. Such an argument must be treated with the utmost caution, since its sanction in any case would result in having individual tax liability depend, not upon the factors and measures prescribed by Congress as applicable to all, but upon the statements and conduct of a particular Government officer in respect of each individual.

As we have already pointed out, section 3176 of the Revised Statutes, as amended by section 1311 of the Revenue Act of 1921, plainly requires that before a taxpayer can get relief from the imposition of ad valorem penalties by showing that his failure to file the original return within the time required by law was due to reasonable cause and not willful neglect, he must file a belated return.

We find no provision in the law which would permit the Commissioner to waive this requirement of the statute by the conduct of his subordinate employees, or indeed by his own express action.

Petitioner's assignment of error " E " is accordingly denied.

Reviewed by the Board.

*Decision will be entered under Rule 50.*