PAUL PRYIBIL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58952.   Promulgated September 14, 1934.

*Daniel B. Priest, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

LEECH: This proceeding seeks the redetermination of a deficiency of $11,321.18 for the calendar year 1928. The total deficiency is not in controversy. The only issue is whether respondent erred in disallowing a deduction of $91,027.97 claimed as a bad debt.

Petitioner is an individual having his office in New York City, and is engaged in the business of a stock broker. Prior to 1929, he was engaged chiefly in the real estate business.

In 1925 petitioner went to Florida and organized a corporation under the laws of that state, known as Pryibil & Co., to engage in the real estate business. He paid $10,000 cash for all of the corporation's capital stock, consisting of 100 shares, and became its president and treasurer. In or about June and July 1925, the corporation acquired four parcels of real estate and on or about September 25, 1925, it entered into a contract for the purchase of another parcel, but that contract was not consummated. Petitioner advanced the funds necessary for such purchases and, also, such funds as were necessary for interest on mortgages and taxes. The corporation gave petitioner a blanket mortgage in the amount of $90,000, subject

to the prior mortgages on the several properties, as security for his advances, which totaled $145,468.29.

The only books kept by the corporation were its check books on two Florida banks. In such books there were entered all deposits by petitioner and all withdrawals for the real estate transactions, and also withdrawals for the personal use of petitioner, including checks for cash, hotel, laundry, maid, apartment rent, groceries, entertainment, expenses of various clubs, clothing, stock margin accounts, and other miscellaneous items. Petitioner's withdrawals for his personal use amounted to $62,058.02. The last entries in the two check books were made in March 1926.

A portion of the funds advanced to the corporation by petitioner was borrowed by the latter from his mother. As security for such loans, he assigned to her the 100 shares of stock of Pryibil & Co. and the above mentioned $90,000 blanket mortgage. Although the record is not clear, it appears that in 1927 petitioner's mother offered the $90,000 mortgage for sale at public auction in New York City, and bid it in herself for $1,000.

At some time during 1927, one parcel of real estate was sold by the corporation and two others were deeded back to the parties from whom they had been purchased. On December 31, 1927, the only asset which the corporation had was lot 9, Barton Avenue, Kendleton Tract, Palm Beach, the purchase price of which was $40,000 in or about June 1925, including a mortgage of approximately $28,000 assumed by the corporation. On the same date, December 31, 1927, the corporation had outstanding $10,000 par value capital stock and is alleged by petitioner to have been indebted to him in the amount of $83,410.27 on account of his advances. There is no evidence of the market value of the corporation's equity in lot 9, December 31, 1927.

At the end of the year 1926, petitioner and two other men were developing plans to build a cooperative apartment building on lot 9, and certain adjoining property. Their prospectus, published about February 1927, set forth the plan in detail and under the heading "Payment Plan" stated in part: "If the construction does not begin on or before July 1, 1927, the trustee will return to the purchaser the cash payment and the notes and the purchaser will be free of all obligation." The venture never materialized and after an unsuccessful effort to sell lot 9, Pryibil & Co., in March 1928, deeded it back to the party from whom it was purchased. In July 1928, the corporation was dissolved. Petitioner never recovered any portion of the $10,000 invested in the stock of Pryibil & Co., nor the $83,410.27 indebtedness of the corporation to him.

On his return for 1928, petitioner claimed a deduction of $91,-027.97 as a bad debt which the respondent disallowed. Petitioner now

claims a deduction of $10,000 as a loss on Pryibil & Co. stock, and $83,410.27 as a bad debt for the year 1928. Respondent determined that the stock and the debt became worthless prior to December 31, 1927.

With reference to the claimed stock loss, section 23 (e) of the Revenue Act of 1928 provides for a deduction of " losses sustained during the taxable year." Petitioner's loss on the Pryibil & Co. stock was *sustained* in the year in which such stock became worthless, *Forbes* v. *Commissioner*, 62 Fed. (2d) 571, and petitioner is entitled to the deduction only in the year in which the loss was actually sustained. Upon this record we are unable to determine as a fact, when the stock actually became worthless, but our conclusion is that apparently it became worthless prior to 1928. In *William E. Steinback*, 30 B.T.A. 1252, we held that where respondent's determination rests upon a finding of fact that the taxpayer's stock became worthless in a year other than the taxable year for which a loss deduction was sought, and the taxpayer failed to establish that his stock did not become worthless in such other year, the respondent's determination must be approved. In the instant proceeding, we sustain the respondent's disallowance of the claimed loss deduction of $10,000.

With reference to the claimed bad debt deduction on account of advances made by petitioner to Pryibil & Co., there is no question, upon this record, but that the debt was worthless in 1928 when the corporation was dissolved. However, before a claimed deduction may be allowed, the taxpayer seeking it must show that it comes within the provisions of the applicable revenue act. Cf. *New Colonial Ice Co.* v. *Commissioner*, 292 U.S. 435. Section 23 (j) of the Revenue Act of 1928 provides for a deduction of " Debts ascertained to be worthless and charged off within the taxable year * * *." Petitioner does not have an election as to the year in which he may take a deduction for a worthless debt, for such deduction may be allowed *only* in the year in which two things occur, (1) the ascertainment of worthlessness and (2) the charge-off. *D. P. Harris Hardware & Mfg. Co.*, 24 B.T.A. 752; affd., 71 Fed. (2d) 1004; *Avery* v. *Commissioner*, 22 Fed. (2d) 6. If a taxpayer keeps no books and is therefore unable to make a formal charge-off, he is entitled to the deduction if claimed on his return for such year. *Frank A. Spencer*, 21 B.T.A. 859. Here, the record does not disclose whether petitioner kept a set of books or not, and there is no showing of a charge-off for the year 1928 except the deduction claimed on his return for that year. In cases where there has been an actual charge-off in the taxable year, but a failure to prove the ascertainment of worthlessness in the same year, the claimed bad debt deduction has been disallowed. Cf.

*Frank B. Essex*, 21 B.T.A. 270; *Avery* v. *Commissioner, supra.* Here, petitioner has given considerable testimony concerning the creation of the debts and the financial condition of the corporation, which leads us to the conclusion that apparently the debts were actually as worthless prior to 1928 as they were upon the dissolution of the corporation. The record is silent as to when petitioner actually *ascertained* the debt to be worthless. Upon this state of the record, we can not find as a fact that petitioner, for the first time, ascertained the debts to be worthless in 1928. Cf. *Ida A. Van Dyke*, 23 B.T.A. 946; affd., 63 Fed. (2d) 1020.

The foregoing discussion of this issue has been upon the premise that the corporation was in fact indebted to petitioner in the amount of $83,400.27 in 1927 and 1928. However, under the present record, it is impossible for us to determine definitely whether this was the fact, as petitioner's testimony is in many respects contradictory. It is not claimed that petitioner advanced more than $145,468.29 to the corporation, and it is admitted that he recouped this advance to the extent of $62,058.02 by personal withdrawals. As security for his advances, petitioner received a $90,000 mortgage on the corporation's real estate, which mortgage he assigned to his mother as collateral security for certain indebtedness due from him to her. It is indicated that petitioner's mother in 1927 foreclosed on this security and bid it in herself for a nominal amount.

On this state of facts, it is readily seen that after the foreclosure, petitioner's mother became the corporation's creditor instead of petitioner, and if such was the fact, petitioner was not a creditor of the corporation at the close of the year 1927, for the amount of the mortgage exceeded the balance due petitioner at the time his mother became the owner of the mortgage debt. We sustain respondent's disallowance of the claimed bad debt deduction.

*Decision will be entered for the respondent.*