Charles Kimmelman v. Commissioner.
Kimmelman v. Commissioner
Docket No. 108595.
United States Tax Court
1943 Tax Ct. Memo LEXIS 374; 1 T.C.M. (CCH) 859; T.C.M. (RIA) 43158; April 2, 1943
*374 Sidney Harris, Esq., for the petitioner. J. Richard Riggles, Jr., Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: The Commissioner determined a deficiency in income tax for 1937 of $2,149.81. The question presented is whether petitioner is entitled to a bad debt deduction from 1937 gross income in the amount of $23,100 as claimed by him, or sustained a capital loss in that amount limited by the provisions of section 117 (a) and (d), Revenue Act of 1936, as determined by respondent. The case was submitted on oral testimony and exhibits. Findings of Fact The petitioner is an individual whose address is 745 Fifth Avenue, New York, N.Y. His return was filed with the collector of internal revenue for the upper New York division. On November 25, 1925, the Smoleroff Construction Co., Inc., as owner of the property located at 1840-56, Bryant Avenue, Bronx, New York, made, executed and delivered to the Krumholz Bros., Inc., a bond in the sum of $118,000 secured by mortgage on said premises, which mortgage was subject and inferior to a prior existing mortgage held and owned by the Metropolitan Life Insurance Co. on the same premises. On January 27, *375 1926, petitioner acquired said bond and mortgage by assignment from Krumholz Bros., Inc., in consideration of $82,600. On January 1, 1927, the Smoleroff Construction Co., Inc., sold and conveyed said premises to the present owner, the M. Smoleroff Holding Co., Inc., and there-after was dissolved. After 1927 Smoleroff Construction Co., Inc., had no assets. Between 1926 and 1932 petitioner received the sum of $46,500 in reduction of the principal, leaving an unpaid balance of face value of $71,500 and an unpaid balance of cost to petitioner of $36,100. On October 21, 1937, petitioner upon receipt of $13,000 assigned said mortgage, together with the bond or obligation described therein, and the moneys due and to grow due thereon with interest, without recourse, to the Shirmir Holding Co., Inc., its successors, legal representatives and assigns forever. The Smoleroff Construction Co., Inc., the M. Smoleroff Holding Co., Inc., and the Shirmir Holding Co., Inc., were separte and distinct corporations controlled by Mitchell Smoleroff who conducted the negotiations resulting in the assignment of the bond and mortgage to the Shirmir Holding Co., Inc. Petitioner's bond and mortgage first *376 went into default in 1931. The mortgage held by the Metropolitan Life Insurance Co. was likewise in default. On December 3, 1931, M. Smoleroff Holding Co., Inc., owner of the premises, as first party, petitioner as second party and Mitchell Smoleroff as third party executed a rent assignment as additional security and to avoid foreclosure by petitioner. On March 28, 1932 a rent assignment was made by M. Smoleroff Holding Co., Inc., owner of the premises, to the Metropolitan yIfe yNs0uance Co. as further security and to avoid foreclosure under the first mortgage. Thereafter petitioner was unable to collect rents to apply on the bond and mortgage held by him. In 1937 Smoleroff sought a readjustment with the Metropolitan Life Insurance Co. to avoid foreclosure of the first mortgage. To do so it became necessary to make some arrangement with petitioner as to his bond and mortgage. The value of the property was less than the first mortgage indebtedness in 1937, as well as in prior years. After negotiations petitioner and Smoleroff arrived at a figure of $13,000 for the bond and mortgage. The money was paid and petitioner's bond and mortgage assigned to the Shirmir Holding Co., Inc. *377 The bond and mortgage was not ascertained to be worthless and charged off during the taxable year. The bond and mortgage in question was a capital asset in petitioner's hands and was sold or exchanged in 1937 by petitioner for $13,000. Opinion In his determination respondent treated the transfer of the bond and mortgage by petitioner to the Shirmir Holding Co., Inc., as a sale or exchange of a capital asset for a consideration of $13,000, with a resulting capital loss of $23,100, applied the loss limitation provisions of section 117 (a) and (d), and determined a deficiency in income tax in the amount of $2,149.81. Petitioner contends this is error and claims a bad debt deduction of $23,100 in 1937. The amount of the loss is not in dispute. Petitioner argues that the loss should be classified as a bad debt rather than a capital loss for the reasons that prior to the time of the "sale" he ascertained the worthlessness of the security, based upon the insolvency of the debtor corporation, default under the prior mortgage, the property worth less than the first mortgage lien, and that the $13,000 received in 1937 was in settlement and satisfaction of the indebtedness and that the so-called *378 sale and transfer of the bond and mortgage was not actually a sale. If the transaction on October 21, 1937 constituted a sale or exchange of a capital asset, then respondent's determination must be approved and petitioner's claim denied. Petitioner purchased the bond and mortgage from Krumholz Bros., Inc., mortgagee, on January 27, 1926 for a consideration of $82,600. Prior to the taxable year he had received $46,500 which reduced his investment to $36,100. He held and owned the bond and mortgage until October 21, 1937 when he disposed of his right, title and interest therein for $13,000, which resulted in a loss of $23,100. That the bond and mortgage were property and constituted a capital asset we think there is no question. Section 117 (b),Revenue Act of 1936, defines capital assets as property held by the taxpayer whether or not connected with his trade or business, with certain exceptions not here material. Art. 117-1, Regulations 94, defines the term "capital assets" as including all classes of property not specifically excluded by section 117 (b). In Josephine C. Bowen, 37 B.T.A. 412, we said: No argument has been advanced, nor could any be *379 successfully maintained, that petitioner's interest in the mortgages was not a capital asset within the scope of section 117 (b). Obviously, the mortgages were property within the definition. Petitioner contends that as Mitchell Smoleroff was the controlling factor in the three corporations, he should be treated as the real party in interest, the separate entities disregarded and the receipt of the $13,000 by petitioner treated as a payment pro tanto on an indebtedness with a resulting bad debt loss. Milton A. Kimmelman, son of the petitioner and associated with his father, after testifying to the situation generally and the negotiations leading up to the transfer, stated "We negotiated further with Smoleroff, and finally arrived at a figure of $13,000 for the bond and mortgage", and that "Mr. Smoleroff had his counsel get in touch with us, Henry Frank, and told us to draw an assignment of the mortgage, and we assigned the mortgage to his designee". His testimony, taken into consideration with all the other facts and circumstances of record, convinces us that a sale was made on the bond and mortgage. Smoleroff Construction Co., Inc., mortgagor, after it sold the property covered *380 by the mortgage on January 1, 1927, was dissolved and it had no assets after 1927. It does not appear that either Mitchell Smoleroff, the M. Smoleroff Holding Co., Inc., or the Shirmir Holding Co., Inc., had assumed any liability for the payment of the bond and mortgage or was liable for the payment thereof in any manner. Mitchell Smoleroff and the corporations controlled by him were all separate and distinct entities and we find nothing in the record to justify ignoring that fact or in treating the matter in any manner other than the form the parties themselves adopted in transferring the bond and mortgage to Shirmir Holding Co., Inc., by assignment. The authorities cited in the briefs of petitioner and amicus curiae in support of petitioner's contention that the separate identity of the corporations here involved should be ignored are not applicable under the facts here. Smoleroff evidently had to get petitioner's bond and mortgage out of the way to consummate his negotiations with the Metropolitan Life Insurance Co. for readjustment of the first mortgage. Petitioner was in a position to drive a good bargain with Smoleroff because of Smoleroff's anxiety to make an adjustment with *381 the Metropolitan Life Insurance Co. as to the first mortgage. The record does not justify a conclusion that payment in satisfaction of the liability was made or intended. On the contrary the fact that the assignment was not made to the M. Smoleroff Holding Co., Inc., owner of the mortgaged premises, but to Shirmir Holding Co., Inc., which was in no way interested in the property so far as the record shows, would indicate an intention, at least on the part of Smoleroff, to purchase the bond and mortgage and keep them alive. If Smoleroff purchased the property it was a sale by petitioner and not a payment in satisfaction pro tanto of the indebtedness. Furthermore, petitioner would not be entitled to a bad debt deduction in 1937, as the mortgagor corporation, maker of the bond and mortgage, had no assets and had been dissolved prior to the taxable year. No personal liability for payment rested on any of the interested parties. The property covered by the mortgage was of less value than the first mortgage indebtedness in the taxable year and prior years. Milton A. Kimmelman, on cross examination, testified he was familiar with the value of the mortgaged premises and said, "I would *382 say that the valuation was less than the first mortgage, plus the arrears at all times between 1932 and 1937." Petitioner knew these facts, or by the exercise of ordinary prudence, should have known his bond and mortgage was worthless prior to 1937. At the beginning of the year 1937 he knew, or should have known, that he had no source to look to for payment other than the mortgaged property and it was worth less than the outstanding first mortgage indebtedness. Furthermore, the record does not disclose whether or not petitioner kept a set of books, nor does it show the debt was ascertained to be worthless and charged off in the taxable year. Both ascertainment and charge off must be in the taxable year to overcome respondent's determination. Section 23, Revenue Act of 1936. Paul Pryibil, 31 B.T.A. 164. Decision will be entered for the respondent.